UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>BDO USA, P.C.,<br><br>Defendant. | Civil Action No. 24-2421 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Kevin Anderson began working for Defendant BDO USA, P.C., an accounting and professional services firm, in 2007. Shortly after he turned 70, BDO informed him that he could continue working at the firm only if he agreed to a reduction in both compensation and employee benefits. When he refused to accept that new arrangement, BDO terminated him. Anderson then brought this action against his former employer, alleging that the firm violated the District of Columbia Human Rights Act by firing him because of his age. Having successfully removed the case on the basis of diversity jurisdiction, Defendant now moves to dismiss on the ground that the Complaint fails to state a plausible claim of age discrimination. The Court disagrees and will deny the Motion.

**I.    Background**

The Court, as it must at this stage, draws the facts from the Complaint and assumes them to be true. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). Anderson joined BDO's predecessor firm as a partner in 2007. See ECF No. 1-1 (Compl.), ¶ 10. In this role, he was responsible for applying his expertise to "domestic corporate tax, mergers &

acquisitions, bankruptcy and troubled debt restructuring, leasing, and general federal income tax issues" to aid the BDO National Tax Office's expansion efforts.  Id.  Throughout his time at the firm, BDO's leadership praised Anderson for his reliability, attention to detail, and improvements in the quality and scope of BDO's client services.  Id.

Plaintiff served as a BDO partner until June 30, 2019, when he turned 65 and reached the firm's mandatory retirement age for fixed-share partners.  Id., ¶¶ 12–13.  After his retirement as a partner, he continued working for BDO as a "Managing Director for the National Tax Office."  Id., ¶ 13.  Anderson's work in that role entailed the same duties and the same pay; further, "he continued to be held in high regard by everyone with whom he worked."  Id., ¶¶ 14–16.

Plaintiff's story took a quick turn after he turned 70 on September 21, 2023.  Id., ¶¶ 17–18.  Six weeks later, he was summoned to a meeting with leadership from BDO's National Tax Office, where he was informed that he could continue working at BDO only if he agreed to certain conditions: he would be compensated on an hourly basis capped at 20 hours per week; nonbillable hours required advance approval from firm leadership; administrative time would be capped at two hours per week; BDO would not contribute to health or retirement benefits; and Anderson could receive neither holiday pay nor paid leave.  Id., ¶ 18.  In essence, Plaintiff was relegated to part-time work with reduced compensation and benefits.  BDO proposed these changes without any explanation and despite a lack of decline in Anderson's work performance.  Id., ¶¶ 17, 19.  Plaintiff further alleges that "[n]o other employee was given such an 'offer.'"  Id., ¶ 30.

Anderson attempted to propose a different arrangement with BDO, but the firm declined to participate in any further negotiations.  Id., ¶ 20.  When he rejected its offer, BDO terminated his employment on December 11, 2023, with an effective date of January 1, 2024.  Id., ¶ 21.

Plaintiff's colleagues expressed surprise that he was "retiring" after word spread throughout BDO that he was leaving the firm. Id., ¶ 22.

Frustrated with the circumstances of his termination, Plaintiff sent an email to BDO leadership on December 20, 2023, noting his disappointment that years of loyal work for the firm could result in such shabby treatment. Id., ¶ 23. BDO responded by accelerating his termination to that very afternoon. Id., ¶ 24. Anderson immediately lost access to BDO resources, including company systems and the physical office. Id.

On July 26, 2024, Plaintiff filed this suit in the Superior Court of the District of Columbia, asserting that BDO had violated the DCHRA by unlawfully terminating him on the basis of his age. Id., ¶ 1. BDO removed the case to this Court on diversity-jurisdiction grounds, and it now moves to dismiss Anderson's Complaint for failure to state a claim of age discrimination.

**II.     Legal Standard**

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6) motion, the court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted). The pleading rules are "not meant to impose a great burden," Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are thus not necessary. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Twombly, 550 U.S. at 570). The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). The facts instead "must be enough to raise a right to relief above the speculative level" even if "recovery is very remote and unlikely." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

### III. Analysis

The DCHRA prohibits an employer from terminating an employee "wholly or partially" on the basis of that employee's age. See D.C. Code § 2-1402.11(a)(1)(A). To state a claim for age discrimination under that statute, a plaintiff must allege: "(1) that he was a member of a protected class, (2) that he was qualified for the job from which he was terminated, (3) that his termination occurred despite his employment qualifications, and (4) that a substantial factor in his termination was his membership in the protected class." McFarland v. George Washington Univ., 935 A.2d 337, 352 (D.C. 2007) (quoting Hollins v. Fed. Nat'l Mortg. Ass'n, 760 A.2d 563, 572 (D.C. 2000)). Both this court and District of Columbia courts generally "look[] to federal court decisions interpreting the federal Age Discrimination Employment Act" to evaluate age-discrimination claims under the DCHRA. Wash. Convention Ctr. Auth. v. Johnson, 953 A.2d 1064, 1073 n.7 (D.C. 2008).

BDO contends that dismissal is warranted both because Anderson relies on the wrong causation standard for such a claim and because his allegations are factually insufficient. The Court addresses each of those issues in turn.

#### A. Causation Standard

BDO initially argues that Anderson must "plausibly allege that his age was the 'but-for'

cause for his termination." ECF No. 5-1 (MTD) at 4–5. The Court, however, finds that this standard does not apply to age-discrimination claims under the DCHRA for three reasons.

First, it is notable that the District of Columbia Court of Appeals has recently rejected "but-for" causation in other DCHRA contexts. For example, in Rose v. United General Contractors, 285 A.3d 186 (D.C. 2022), that court declined to apply ADEA "but-for" causation to a DCHRA disability claim. The court observed that the Act proscribed employers from discriminating against an employee "wholly or partially" because of a disability, and it held that the provision applies if disability "was a significant motivating factor bringing about the employer's decision." Id. at 196–97 (quoting Scrivener v. Clark Coll., 334 P.3d 541, 545 (Wash. 2014) (*en banc*)); see also Hsieh v. Formosan Ass'n for Pub. Affs., 316 A.3d 448, 453 (D.C. 2024) (holding that disability claims under DCHRA are subject to "motivating factor" standard). DCHRA prohibitions on disability discrimination are nested in the same provision covering various forms of status-based discrimination, including age discrimination. See D.C. Code § 2-1402.11(a). As such, the D.C.C.A. has since framed Rose as holding that "the motivating-reason standard applies to status-based discrimination claims under the DCHRA." District of Columbia v. Bryant, 307 A.3d 443, 450 n.4 (D.C. 2024) (emphasis omitted).

Second, Defendant resists that D.C.C.A. precedent by misreading Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009), which held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse action." Id. at 180. Even assuming that ADEA-specific standards govern this DCHRA claim, however, Gross did not broadly establish that "but for" causation applies to the ADEA writ large. In that case, the Supreme Court specifically evaluated the private-sector provision of the ADEA, which makes it "unlawful for an

5

employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." Id. at 176 (quoting 29 U.S.C. § 623(a)(1)). The phrase "because of" was interpreted as synonymous with classic "but-for" causation. Id. In Babb v. Wilkie, 589 U.S. 399 (2020), however, the Court later recognized that certain ADEA provisions are couched in different terms, and that those differences have import. More specifically, the public-sector sector provision provides that "personnel actions" affecting individuals aged 40 and older "shall be made free from any discrimination based on age." Id. at 402 (quoting 29 U.S.C. § 633a(a)). The Court held that the phrase "free from any discrimination" does not impose a "but-for" standard but instead more broadly requires that "personnel actions be untainted by any consideration of age." Id.

  The textual differences between the public- and private-sector provisions of the ADEA have a direct bearing on the DCHRA's age-discrimination provision. The local statute does not merely restrict an employer from terminating an employee "because of" her age. Rather, it capaciously states that "[i]t shall be unlawful" to take adverse action "wholly or partially for a discriminatory reason" based on age. See D.C. Code § 2-1402.11(a). That phrase — "wholly or partially" — aligns more closely with the ADEA public-sector provision "free from any discrimination." As such, the DCHRA does not require "but-for" causation.

  Last, even if Defendant has the correct reading of Gross, the fact that District of Columbia courts "look to cases interpreting the federal [ADEA]" to evaluate the DCHRA, Badwal v. Bd. of Trs. of Univ. of D.C., 139 F. Supp. 3d 295, 315 (D.D.C. 2015), does not mean that courts treat the two statutes identically. The D.C. Circuit emphasized relevant differences between the two statutes in Schuler v. PricewaterhouseCoopers LLP, 595 F.3d 370 (D.C. Cir. 2010). There, the court observed that, under precedent predating the decision in Gross, a

6

claimant under the DCHRA had to show not that age was a "but-for" cause of an employment decision, but that "age had a determinative influence" on an employment action or that "age actually motivated [an] employer's decision." Id. at 376 (internal quotation marks and citation omitted). The court expressly declined to address whether DCHRA caselaw prescribed a different standard than "but-for" causation because the plaintiff could not meet either the stringent or the more commodious benchmark. Id.

In light of the above, this Court holds that Anderson did not have to allege that age was the "but-for" cause of his termination to support his DCHRA age-discrimination claim. Instead, he merely had to allege that it was a motivating factor in BDO's decision to fire him.

B. Sufficiency of Complaint

Having established the correct causation standard, the Court turns next to whether Anderson sufficiently alleged that his age was a motivating factor in his termination from BDO. It preliminarily notes two important propositions that qualify the pleading standards for an age-discrimination claim. First, "an employment discrimination plaintiff is not required to plead every fact necessary to establish a prima facie case to survive a motion to dismiss." Jones v. Air Line Pilots Ass'n, Int'l, 642 F.3d 1100, 1104 (D.C. Cir. 2011). For example, he is "not required to allege that he was disadvantaged in favor of a younger person" since "such a showing is merely sufficient rather than necessary." Badwal, 139 F. Supp. 3d at 316 n.18 (citing O'Connor v. Consol. Caterers Corp., 517 U.S. 308, 311–12 (1996)). Second, like other claims, "age discrimination claims should be construed liberally at the motion to dismiss stage." Lurensky v. Wellinghoff, 167 F. Supp. 3d 1, 15 (D.D.C. 2016).

Anderson's Complaint clears the bar. He was 70 years old at the time of his firing. See Compl., ¶ 17. He alleges that he "continued to deliver top-quality client service" and that his

7

billing rate at the firm had nearly doubled.  Id., ¶¶ 15–16.  Last, he was subject to an adverse personnel action in that he was forced to choose between receiving part-time pay for full-time work or leaving the firm.  Id., ¶ 19.

      BDO argues that this is insufficient to survive a motion to dismiss even in light of the inferences that can be gleaned from the facts alleged.  See MTD at 5.  The firm frames the Complaint as one that provides nothing more than conclusory allegations and a formulaic recitation of the elements needed to raise an age-discrimination claim.  Id.  In other words, BDO critiques the Complaint as simply noting that Anderson turned 70 and was subsequently fired.

      Defendant is correct that age, standing alone, is insufficient to support a discrimination claim.  Id. (citing Lurensky, 167 F. Supp. 3d at 15).  As thin as Anderson's Complaint may be, however, it contains more heft than BDO asserts.  Plaintiff did not merely allege that his age placed him in a protected class; he also identified an adverse action that took place just six weeks after he turned 70, and he alleged specific qualifications that could permit him to continue serving as Managing Director.  Those facts raise a plausible inference that age was a motivating factor in his termination.

      The handful of cases BDO cites to support its position, moreover, address circumstances distinct from Anderson's.  The plaintiffs in those cases provided considerably sparser allegations than he did.  For example, in Committee v. Georgetown University, 2018 WL 4778927 (D.D.C. Oct. 3, 2018), the plaintiff brought an age-discrimination claim against Georgetown University after it refused to hire him.  Id. at *1.  The court swiftly dismissed the action, noting that the plaintiff had alleged only that he was over 40 years old and was passed over for the position; he never indicated, for example, that he was qualified for this position or that a younger applicant was chosen instead.  Id. at *2.  In Lurensky, the plaintiff raised age-, disability-, and religious-

8

discrimination claims to challenge a litany of personnel actions. See 167 F. Supp. 3d at 7–8. The court found that she had alleged little beyond her age and, in any event, failed to show how any of her employer's actions were adverse. Id. at 15–17. Finally, in Burford v. Yellen, 246 F. Supp. 3d 161 (D.D.C. 2017), the plaintiff brought an age-discrimination claim to redress both an altercation with a younger colleague and her younger supervisor's subsequent failure to resolve the conflict. Id. at 167. The thrust of the court's decision there similarly relied on the lack of an adverse personnel action. Id. at 177–78.

Although Anderson's Complaint may not be a robust one, the Court cannot dismiss it at this stage in the litigation.

**IV.   Conclusion**

For these reasons, the Court will deny Defendant's Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: November 12, 2024